321-20/GMV/YA
**FREEHILL HOGAN & MAHAR LLP**
*Attorneys for Plaintiffs*
80 Pine Street, 25th Floor
New York, New York 10005-1759
(T): 212.425.1900 | (F): 212.425.1901
Gina M. Venezia (venezia@freehill.com)
Yaakov U. Adler (adler@freehill.com)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROSE SHIPPING LTD. and POLES SHIPPING CO LTD., <br><br> Plaintiffs, <br><br> v. <br><br> INTEGR8 FUELS INC., <br><br> Defendant. | Civ. No. _____ <br><br> **COMPLAINT FOR** <u>**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**</u> |

Plaintiffs Prose Shipping Limited ("Prose") and Poles Shipping Company Limited ("Poles"), by and through their attorneys, Freehill Hogan & Mahar LLP, as and for their complaint against Defendant Integr8 Fuels Inc. ("Integr8" or "Defendant") seeking declaratory and injunctive relief with respect to a New York arbitration proceeding commenced by Integr8 against Plaintiffs, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs bring this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* and/or the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 201 *et seq.*, to stay a New York arbitration commenced by Integr8 against Plaintiffs and to obtain an order enjoining Integr8 from proceeding further with that arbitration against Plaintiffs.

2. The basis for the stay and injunction is that there is no agreement to arbitrate any dispute between Plaintiffs and Integr8.

3. Plaintiffs will suffer irreparable harm if forced to arbitrate a dispute with Integr8 because neither Prose nor Poles has entered into an agreement to arbitrate with Intergr8.

4. Plaintiffs can readily demonstrate a likelihood of success on the merits of their claim that they have never been a party to a contract with Integr8.

5. Accordingly, Plaintiffs seek a declaratory judgment and a permanent injunction enjoining Integr8 from further demanding or proceeding with arbitration against Plaintiffs.

## JURISDICTION AND VENUE

6. This action falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 in that it is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59 (2d Cir. 2012).

7. This action also falls under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that it arises under the New York Convention, 9 U.S.C. § 203, as supplemented by the FAA, 9 U.S.C. § 1, *et seq.*

8. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, *i.e.*, Integr8's effort to force Plaintiffs into a New York arbitration proceeding pursuant to a contract to which neither Plaintiff is a party.

## THE PARTIES

9. Plaintiff Prose is and was at all material times a foreign corporation organized and existing under the laws of Malta with a principal place of business located in Valetta, Malta. At

the time of the subject charter (discussed below), Prose was the owner of the vessel which was then known as the M/V SEA LAVENDER (the "Vessel").

10. Plaintiff Poles is and was at all material times a foreign corporation organized and existing under the laws of Malta with a principal place of business located in Valetta, Malta. Poles is the current owner of the Vessel, which is now named the M/V POLES.

11. Defendant Integr8 is and was at all material times a foreign corporation with a registered address at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshal Islands MH 96960. At all relevant times, Integr8 was and is a seller of marine fuel oil, sometimes referred to as "bunkers," to vessel owners and charterers (among others) throughout the world.

## FACTUAL BACKGROUND

12. Under a fixture recap and time charterparty (the "Charter"), dated August 16, 2018, Plaintiff Prose, as owner, agreed to let the Vessel to Harmony Innovation Shipping Ltd. ("Harmony"), as charterer, for a time charter trip to carry coal from Indonesia to India.

13. Harmony, on information and belief, is a company with a registered address and principal place of business at Singapore.

14. The Charter was on a New York Produce Exchange ("NYPE") charter party form, which is a standard form utilized throughout the maritime industry.

15. The Charter stated that it was governed by English law.

16. As time charterer, Harmony was obliged to supply the Vessel with bunkers to perform the voyage.

17. On or about August 27, 2018, Harmony contracted with Integr8 to purchase between 350 and 500 metric tons of bunkers to be delivered to the Vessel at Singapore.

18. Harmony acted through its Singapore office in contracting with Integr8 for the purchase of the bunkers.

19. In connection with its contract with Harmony, Integr8 acted through its Singapore office/branch during all material times.

20. The sales agreement for the bunkers was memorialized that same date in a confirmation that Integr8 issued to Harmony (the "Bunker Confirmation").

21. The Bunker Confirmation purports to incorporate Integr8's General Terms and Conditions ("GTCs") by reference. The GTCs provide for the application of the federal maritime law of the United States or, alternatively, New York law; arbitration in New York; and jurisdiction in this District for purposes of compelling arbitration or confirming an arbitral award.

22. Integr8 sent the Bunker Confirmation to Harmony on August 27, 2018.

23. The Bunker Confirmation was not sent to Prose (then the owner of the Vessel) in the ordinary course.

24. Prose never saw the Bunker Confirmation until October 2019, well after the bunkers were delivered to the Vessel and only after Integr8 lodged its claim against Plaintiffs.

25. Integr8 did not physically supply the bunkers to the Vessel itself.

26. The Bunker Confirmation sent to Harmony identified the physical supplier of the bunkers to be NewOcean Fuel (Singapore) Pte. Ltd. ("NewOcean").

27. NewOcean also did not physically deliver the bunkers to the Vessel.

28. The bunkers purchased by Harmony were actually delivered to the Vessel by a third party, Southernpec (Singapore) PTE Ltd. ("Southernpec"), as reflected in the Bunker Delivery Note ("BDN").

29. After the delivery was complete on September 6, 2018, Southernpec prepared and delivered to the Vessel the BDN.

30. In accord with standard industry practice, the BDN was signed and stamped by the Vessel's Chief Engineer.

31. The BDN makes no mention of Integr8 or its GTCs.

32. The BDN confirms delivery of 498.766 metric tons of bunkers to the Vessel by the bunker tanker Southernpec 6 on September 6, 2018.

33. While onboard, the bunkers were considered the property of Harmony, not Prose.

34. Following its voyage, the Vessel was redelivered from Harmony to Prose on September 14, 2018.

35. In accordance with the terms of the Charter, Prose paid Harmony for any bunkers remaining onboard the Vessel at redelivery.

36. On or about September 24, 2018, Integr8 sent Harmony an invoice reflecting the purchase price of the bunkers of USD 229,934.83.

37. The invoice was not addressed or sent to Prose or Poles.

38. Harmony has not paid Integr8's invoice.

39. Involuntary liquidation proceedings have been commenced as to Harmony in Hong Kong and Singapore.

40. On November 6, 2019, Prose sold the Vessel to its current owner, Poles, whereupon it was renamed the MV POLES.

41. Both Prose and Poles were unaware of and did not receive a copy of the Bunker Confirmation or Integr8's September 24 invoice at the time they were issued.

## **THE PARTIES' DISPUTE**

42. Plaintiffs remained unaware of Integr8's claim against Harmony until over one year later when, on October 10, 2019, Integr8 demanded payment from Poles of Integr8's September 24, 2018, invoice issued to Harmony on the basis that Harmony had not paid Integr8.

43. Plaintiffs rejected Integr8's claim.

44. Thereafter, on April 8, 2020, Integr8 arrested the Vessel at Abidjan, Ivory Coast.

45. Integr8 subsequently initiated a claim on the merits before the Ivory Coast courts on May 8, 2020, although Integr8 has abandoned those proceedings.

46. On May 14, 2020, the Vessel was released from arrest after the Vessel's P&I Club provided a Letter of Undertaking (reserving all defenses), after which the Vessel sailed Abidjan on May 18.

47. On or about May 7, 2020, Integr8 purportedly demanded arbitration against Plaintiffs and Harmony describing them jointly as "buyers," seeking payment of "USD $229,934.83, plus interest that has accrued at the rate of 2% per month, compounded monthly [over 24% per year], since October 5, 2018."

48. The arbitration demand states that arbitral proceedings are to be conducted in the City of New York in accordance with the Rules of the Society of Maritime Arbitrators, Inc.

49. Integr8 named George Tsimis as its party-appointed arbitrator.

50. Integr8 demanded that the arbitration respondents appoint their party-appointed arbitrator within 10 days of being served with the demand.

51. Although Integr8 had communicated with Plaintiffs' legal representative concerning the claim being pursued against Plaintiffs, Integr8 did not send its arbitration demand to the legal representative on May 7, 2020.

52. Integr8 emailed notice of the demand to an operations group within the office of the Vessel's technical and commercial managers.

53. On or about May 29, 2020, Integr8 appointed Bengt Nergaard to serve as Plaintiffs' party-appointed arbitrator.

54. Plaintiffs object to the appointment of Mr. Nergaard which was done without any input from Plaintiffs.

55. Mr. Tsimis and Mr. Nergaard have not yet appointed a panel chair.

## THERE IS NO AGREEMENT TO ARBITRATE

56. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.

57. Neither Poles nor Prose is a signatory to an agreement to arbitrate with Integr8 or the GTCs which purport to include an arbitration clause.

58. Plaintiffs did not contract with Integr8 for the sale of the bunkers that were delivered to the Vessel, Harmony did.

59. Plaintiffs did not require Harmony to contract with Integr8.

60. There is no express agency agreement between Plaintiffs and Harmony.

61. There is no implied agency agreement between Plaintiffs and Harmony.

62. Plaintiffs did not communicate to Integr8 that Harmony was their agent at any time.

63. Plaintiffs did not communicate with Integr8, the alleged physical supplier (NewOcean), or the apparent physical supplier (Southernpec), at any time before Integr8 entered into its contractual relationship with Harmony.

64. The bunker contract with Integr8 is between it and Harmony.

65. Harmony contracted with Integr8 for Harmony's own account.

66. Harmony had no authority to and could not bind Plaintiffs personally to the contract with Integr8.

67. Prose was not aware of the terms of any contract between Harmony and Integr8. Such information would not have been shared with Prose since Harmony was contracting with Integr8 for its own account.

68. Because Plaintiffs are not parties to any agreement with Integr8 and because Harmony is not an agent of Plaintiffs, there is no basis on which Integr8 can proceed to arbitration against Plaintiffs. The arbitration must therefore be stayed and an injunction issued.

69. Plaintiffs are likely to succeed on the merits of their claims because they were not party to any contract with Integr8.

70. Plaintiffs will suffer imminent and irreparable injury if an injunction is not granted because they will be forced to arbitrate a dispute that they are not contractually obligated to arbitrate.

71. No previous application has been made for the relief sought herein.

72. Furthermore, should Integr8 not agree to hold the already commenced arbitration in abeyance pending the Court's determination of this complaint, Plaintiffs will be entitled to a temporary restraining order or preliminary injunction preventing Integr8 from advancing the arbitration pending further order of this Court.

73. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Plaintiffs give notice of and reserves the right to rely on foreign law, including Singapore law.

74. All of the events underlying the supply of the bunkers, including the place of delivery and the Integr8 and Harmony offices which entered into their contract are based in Singapore.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1. Issue an order permanently staying the New York arbitration commenced against Plaintiffs by Integr8;

2. Enter a declaratory judgment in favor of Plaintiffs stating that there is no agreement to arbitrate as between Plaintiffs and Integr8;

3. Award Plaintiffs their costs, expenses, legal fees, and disbursements in prosecuting this action; and

4. Grant such other, further, and different relief as may be just and proper.

Dated: New York, New York
January 14, 2021

    Respectfully submitted,

    /s/ Gina M. Venezia
    Gina M. Venezia (venezia@freehill.com)
    Don P. Murnane, Jr. (murnane@freehill.com)
    Yaakov U. Adler (adler@freehill.com)
    Freehill Hogan & Mahar, LLP
    80 Pine Street, 25th Floor
    New York, New York 10005-1759
    (T): 212.425.1900 | (F): 212.425.1901
    *Attorneys for Plaintiffs*

527247.1