UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
PROSE SHIPPING LTD., et al.,                                :
                                                            :
                              Plaintiffs,                   :
                                                            :    21-cv-341 (VSB)
        - against -                                         :
                                                            :    **OPINION & ORDER**
                                                            :
INTEGR8 FUELS INC.,                                         :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X

Appearances:

Gina Maria Venezia, Don Philip Murnane, Jr., William Joseph Pallas, III, Yaakov U. Adler
Freehill Hogan & Mahar LLP
New York, NY
*Counsel for Plaintiffs*

Patrick F. Lennon
Lennon, Murphy & Phillips, LLC
Westport, CT
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

  Before me is Defendant's motion for leave to amend its answer to assert a counterclaim against Plaintiffs pursuant to Federal Rule of Civil Procedure Rule 15.  (Docs. 28–30.)  Because I find that I have personal jurisdiction over Plaintiffs and that Defendant's proposed amendment is not futile, the motion for leave is GRANTED.

I.     **Factual Background and Procedural History**[1]

This is a maritime dispute concerning payment for "bunkers," the industry term for marine fuel oil. Plaintiffs are foreign corporations based in Malta. (Doc. 1 ("Compl.") at ¶¶ 9–10.) Plaintiff Prose Shipping Ltd. ("Prose") was the owner of a vessel called the M/V SEA LAVENDER (the "Vessel"), which is now owned by co-Plaintiff Poles Shipping Co. Ltd. ("Poles"), under the name M/V POLES. (*Id.*) Defendant Integr8 Fuels Inc. ("Integr8") is a foreign corporation based in the Marshall Islands that sells bunkers. (*Id.* at ¶ 11.)

On August 16, 2018, Plaintiff Prose leased its Vessel to a Singaporean corporation called Harmony Innovation Shipping Ltd. ("Harmony"), under a charter agreement whereby Harmony essentially rented the Vessel for a trip to carry coal from Indonesia to India (the "Charter"). (*Id.* at ¶ 12.) Plaintiffs allege that under the terms of the Charter, Harmony had the responsibility of supplying the Vessel with bunkers to fuel its trip. (*Id.* at ¶ 16.) On August 27, 2018, Harmony contracted with Defendant Integr8 to purchase between 350 and 500 metric tons of bunkers (the "Bunker Contract"). (*Id.* at ¶ 17.) The bunkers were delivered to the Vessel on September 6, 2018. (*Id.* at ¶ 32.) At the end of the time charter trip on September 14, 2018, Plaintiffs allege that Harmony returned the Vessel to Plaintiff Prose, and Plaintiff Prose paid Harmony for any bunkers that remained onboard, in accordance with the terms of their Charter. (*Id.* at ¶¶ 34 & 35.).

It is undisputed that on September 24, 2018, Defendant sent Harmony an invoice seeking $229,934.83 in payment for the bunkers, and that Harmony has not paid that invoice. (*Id.* at ¶¶ 36–38; *see also* Doc. 14 ("Answer") at ¶¶ 36–38.) It is also undisputed that on October 10,

---

[1] For purposes of a motion for leave to amend a pleading, I must "assume the truth of the factual allegations set forth in the proposed amended pleading." *Max Impact, LLC v. Sherwood Grp., Inc.*, No. 09 CIV. 902 LMM HBP, 2012 WL 3831535, at *2 (S.D.N.Y. Aug. 16, 2012). However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

2019, Defendant demanded payment for the bunkers from Plaintiff Poles, which had bought the Vessel from Plaintiff Prose. (Compl. at ¶¶ 42; Answer at ¶¶ 42.) When Plaintiff Poles refused to pay, Defendant arrested the Vessel at Abidjan, Ivory Coast and demanded arbitration against Plaintiffs in New York City.[2] (Compl. at ¶¶ 43, 44, 47, 48; Answer at ¶¶ 43, 44, 47, 48.) Plaintiffs allege that they had no involvement in the Bunker Contract between Harmony and Defendant, and therefore cannot be forced to submit to the arbitration. (*See* Compl. at ¶¶ 22–33, 56–72.) Meanwhile, Defendant's position is that Harmony, Plaintiff Poles, and Plaintiff Prose are jointly liable under the terms of the Bunker Contract, and that Defendant has a right to arbitrate its claim against Plaintiffs and recover $229,934.83 from them as payment for the bunkers, plus interest. (*See* Doc. 17, at 2–3.) Plaintiffs brought the instant action seeking an order permanently staying the New York arbitration and declaratory judgment that there is no agreement to arbitrate. (Compl., Request for Relief at ¶¶ 1, 2.)

On July 9, 2021, Defendant filed a motion for leave to amend its answer and add a counterclaim. (Docs. 28–30.) The contemplated counterclaim would allege that Plaintiffs are liable for conversion of the bunkers. (Doc. 30-1 ("Proposed Counterclaim") at ¶ 1.) Specifically, Defendant alleges that under its Bunker Contract, Defendant "holds retention of title" to the bunkers "as purchase money security interest until full payment is received." (Proposed Counterclaim at ¶ 15.) Defendant argues that because Harmony never paid for the bunkers, Defendant has retained title to the bunkers to present day. (Proposed Counterclaim at ¶ 20.) Therefore, Defendant alleges that when Plaintiff Prose bought the remaining bunkers onboard, Harmony—and by extension Plaintiff Prose—did not have good and valid title to the

---

[2] The Vessel was subsequently released from arrest. The circumstances of the release are disputed, (*see* Doc. 17), but need not be explored here.

3

bunkers. (Proposed Counterclaim at ¶¶ 21–26.)  Likewise, Defendant alleges that when Plaintiff Poles bought the Vessel from Plaintiff Prose, Plaintiff Poles also took wrongful possession of any bunkers remaining onboard.  (Proposed Counterclaim at ¶¶ 27–28.)  Plaintiffs filed a memorandum of law in opposition to Defendant's motion for leave to amend on July 23, 2021.  (Doc. 31 ("Pl.'s Opposition").)  Defendant filed a reply on July 30, 2021.  (Doc. 32 ("Def.'s Reply").)

## II. Legal Standards

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  The "nonmovant bears the burden of showing prejudice, bad faith and futility of the amendment." *Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586(LAK)(GWG), 2014 WL 4460393, at *9 (S.D.N.Y. Sept. 11, 2014) (internal quotation marks omitted).  The decision whether to grant leave to amend is within the sound discretion of the District Court.  *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  As with a motion to dismiss, the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11 (2d Cir. 2010); *see also Max Impact, LLC v.*

4

*Sherwood Grp., Inc.*, No. 09 CIV. 902 LMM HBP, 2012 WL 3831535, at *2 (S.D.N.Y. Aug. 16, 2012) ("In assessing the claimed futility of a proposed amended pleading, the court must assume the truth of the factual allegations set forth in the proposed amended pleading.") (collecting cases). Likewise, a court's review of a motion for leave to amend is generally limited to "the facts as asserted within the four corners" of the proposed pleading. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see also In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) ("To determine whether granting leave to amend would be futile, [courts] consider the proposed amendments and the original [pleading]."); *J. Pub. Co. v. Am. Home Assur. Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991) ("[I]t is axiomatic that a court may not look beyond the face of the [pleading].")

### III. Discussion

As a prefatory matter, Plaintiffs argue that leave to amend should be denied because this Court does not have personal jurisdiction over Plaintiffs for purposes of Defendant's counterclaim. (Pl.'s Opposition 5–7.) This argument is without merit. Regardless of whether a defendant's counterclaim is compulsory or permissive,[3] a plaintiff "cannot object that the court lacks personal jurisdiction" to adjudicate a counterclaim against the plaintiff. 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure ("Wright and Miller") § 1424 (3d ed. 2021). Without citation to contrary authority, Plaintiffs attempt to distinguish this case from the well-established case law, *e.g.*, *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932), by arguing that "the only reason why Plaintiffs have brought suit in this Court . . . is to seek declaratory relief to stop an arbitration which was proceeding

---

[3] The issue of whether the counterclaim is compulsory or permissive need not be reached here, since Defendant's conversion claim is a maritime tort claim over which the Court has subject matter jurisdiction anyway. *See* 28 U.S.C. § 1333; *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 253 (1972) ("If the wrong occurred on navigable waters, the action is within admiralty jurisdiction.").

5

against them in this District," (Pl.'s Opposition 6). Plaintiffs may have good reason to be frustrated about the arbitration proceeding against them in New York City. Nevertheless, by seeking declaratory relief in the Southern District of New York, Plaintiff has not only consented to personal jurisdiction in this District but has also "invok[ed] the benefits and protections of [the forum's] laws"—namely, protection from unjust arbitration proceedings. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 2783 (2011) (internal citation omitted); *see also Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016) (holding a plaintiff that has availed itself of a forum "should reasonably expect to answer a counterclaim in that forum"). Accordingly, the Court has personal jurisdiction over Plaintiffs with respect to the counterclaim.

Plaintiffs' main argument is that Defendant's leave to amend would be futile because Plaintiffs were never in wrongful possession of any bunkers. To state a counterclaim for conversion, Defendant must allege "(1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the [Plaintiffs] exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of [Defendant's] rights." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001) (internal citation omitted). Plaintiffs argue that Defendant expected that the Vessel would burn through the fuel, thus consuming the bunkers, and Defendant therefore consented to Plaintiffs' possession of the bunkers and cannot claim that Plaintiffs' dominion was "unauthorized." (Pl.'s Opposition 7–13.) Plaintiffs identify two factually analogous summary judgment decisions from this district rejecting bunker suppliers' conversion claims on a similar basis. *See In re Millenium Seacarriers, Inc.*, No. 02 CV 8493 (RPP), 2003 WL 22939112 (S.D.N.Y. Dec. 11, 2003), *aff'd*, 419 F.3d 83 (2d Cir. 2005), and *ING Bank N.V. v. M/V Temara*, 203 F. Supp. 3d 355 (S.D.N.Y. 2016).

Citation to these cases, although apparently relevant, is premature. At this stage, the question is "the sufficiency of the proposed allegations," rather than the "merits" of Defendant's proposed counterclaim. *Max Impact*, 2012 WL 3831535, at *4; *see also J. Pub. Co.*, 771 F. Supp. at 635 (considering only "the sufficiency of the allegations" on a motion to amend, not "factual arguments going to the merits" of the proposed claims). Defendant clearly alleges that its intent was not to cede dominion of the bunkers to Plaintiffs, but to "hold[] retention of title to the Products as purchase money security interest until full payment is received," per the terms of its Bunker Contract. (Proposed Counterclaim ¶ 15 (citing Doc. 30-1, "Ex. B: General Terms and Conditions" at ¶ 6-1); *see also* Proposed Counterclaim ¶¶ 1, 20, 26, 28, 29.) Moreover, Second Circuit law does not clearly foreclose Defendant's counterclaim as a matter of law; instead, the Second Circuit has said "evidence that title of the bunkers did not pass to the vessels until payment" might "provide[] a basis for [a] conversion argument." *In re Millenium Seacarriers, Inc.*, 419 F.3d at 91 n.5. To find at this stage of the case that Defendant consented to transfer of title would require straying far beyond "the facts as asserted within the four corners" of the proposed counterclaim, *McCarthy*, 482 F.3d at 191; indeed, that finding would directly contradict the allegations in Defendant's counterclaim.

However, it may be that on a developed factual record, Plaintiffs may ultimately prove that Defendant's conduct demonstrates consent to use by others of the bunkers, notwithstanding the Bunker Contract's explicit title retention clause. (*See* Pl.'s Opposition 7–13.) Plaintiffs may also develop evidence that Plaintiff Poles never exercised dominion or control over the disputed bunkers at all, since "the bunkers had long since been consumed" by the time Plaintiff Poles purchased the Vessel from Plaintiff Prose. (Pl.'s Opposition 13 n.9.) However, these are questions of fact. At the pleadings stage, Defendant has adequately alleged (1) its "legal

ownership" of the bunkers, and (2) Plaintiffs' "unauthorized dominion over" the bunkers. *Phansalkar*, 175 F. Supp. 2d at 639. Because Defendant's proposed counterclaim contains sufficient allegations to state a claim for conversion, the amendment would not be futile.

## IV.     Conclusion

For the foregoing reasons, Defendant's motion for leave to amend its answer is GRANTED. Defendant is directed to file its amended answer within seven (7) days of the date of this Opinion & Order. The Clerk of Court is respectfully directed to close the open motion at Doc. 28.

SO ORDERED.

Dated: January 31, 2022
          New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge

8